BENNING C. ADDITON, in equity,

*vs.*

HARRIET N. SMITH, and others.

Penobscot. Opinion June 1, 1891.

*Will. Annuities. Dower. Presumption of equity. Fixed Charge. R. S., c. 103, § 10.*

| 83 | 551 |
| 86 | 208 |
| 83 | 551 |
| 105 | 205 |

Where a testator gives annuities to his widow and niece as general legacies, each being a simple bequest, an absolute gift of a definite quantity, there is a presumption of intended equality, unless the will contains unequivocal evidence of an intention to give a preference.

This rule applied to a case where the annuity given to the widow was in addition to her dower, and that to the niece by a codicil exhibiting a thoughtful solicitude for her condition; the testator providing that, by the payment of the taxes, insurance and repairs of his homestead, "None of the gifts, or bequests, or rights to my said wife and to my said niece shall be impaired or diminished;" and finally providing that "It shall be the duty of my said executors to so dispose of and invest my estate that there shall be, from year to year, a sufficient income to meet all said legacies and bequests."

A demonstrative legacy has a prior right to payment out of the fund charged, but is payable at all events out of the principal of the estate if the fund proves inadequate.

ON REPORT.

Bill in equity, heard on bill and answers, brought by the trustee to obtain the construction of the will and codicils of Jacob C. Smith, late of Bangor, deceased.

*E. Walker*, for Harriet N. Smith.

*H. C. Goodenow*, for Addie Hill.

Complainant submitted the case without argument.

WHITEHOUSE, J.   By the provisions of his will and codicils Jacob C. Smith gave to his wife, Harriet N. Smith, the use of the homestead and furniture and an annuity of $500.00, during

her widowhood, in addition to her right of dower in his real estate; to his niece, Addie Hill, an annuity of $100.00; and to his adopted daughter, Emma Smith Cushing, and her heirs, the residue and remainder.

The will was dated April 27, 1876, and the last codicil, February 21, 1877. The testator died March 30, 1878, and in December following, the estate was inventoried as follows: real estate, $7,900.00; goods and chattels, $564.50; rights and credits, $8,483.93;—total, $16,948.53. At the date of the complainant's bill the widow had received in the aggregate $3,600.00, being $300.00 a year for twelve years, on account of her annuity, while the niece, Addie Hill, had received but $50.00 in the aggregate, being two payments of $25.00 each in the year 1878. It now appears that by reason of *devastavit* on the part of a former representative of the estate, and from other causes, the entire property in the hands of this complainant as trustee under the will is as follows: homestead, $2,500.00; undivided Grant store, $800.00; land, $450.00; furniture for widow, $164.50; rights and credits estimated, $5,300.00. It further appears that the income from the estate, available for that purpose under the terms of the will, is not sufficient to pay the annuity to the widow irrespective of that bequeathed to Addie Hill. The trustee, therefore, seeks by his bill to obtain a judicial construction of the will and codicils, and to have the rights of the legatees determined and declared, propounding two questions as follows:

1. Whether under said will and codicils, annuities therein specified, or any of them, are an absolute charge on the estate of said testate, regardless of the income.

2. What are the respective rights of the legatees under the provisions of said will and codicils?

It is elementary law that all codicils or "little wills" being but expositions of the testator's afterthoughts, are to be regarded as parts of the original will, and together with the will are to be construed as one instrument. They should be so interpreted as to harmonize with the leading purpose declared in the body of the will whenever this can be done without a violation of

established rules ; but when a clause in the will and one in the codicil are entirely inconsistent and both cannot be executed, the latter clause must prevail. Redf. on Wills, 1, *287. *Pickering* v. *Langdon*, 22 Maine, 413.

In the cardinal rules of testamentary construction it is also constantly affirmed by courts and text writers to be of fundamental importance that the obvious intention of the testator, as expressed by the words of the will itself, shall be allowed to prevail unless some principle of sound policy is thereby violated ; that this intention shall be collected from the whole will taken together, all its parts being construed in relation to each other so as to form if possible one consistent whole, every word receiving its natural and common meaning ; but where several parts are absolutely irreconcilable the latter must prevail ; and that while the language of the will is thus to be deemed the primary source from which the testator's intention is to be gathered, and this is not to be controlled by mere conjectures based on considerations respecting the condition of his property or the objects of his bounty, still these extrinsic circumstances are admissible in aid of the construction of wills to the extent of explaining doubts or removing uncertainties when with that aid the intent is clear.    2 Jarman on Wills, page 762, and rules VII and X ; 1 Redf. on Wills, page *429–432, and authorities cited ; Schouler on Wills, § 466 ; *Shaw* v. *Hussey*, 78 Maine, 495 ; *Emery* v. *Bachelder*, 78 Maine, 233.    But while these general principles declared by the experience of courts to be helpful in the majority of cases are not to be lightly disregarded, they are not to be blindly followed as inflexible and conclusive rules in each particular case.    They are to be employed as servants and not accepted as masters.    *Small* v. *Allen*, 8 T. R. 497.

It is ably and ingeniously argued, in the first place, that the annuity to the widow should have priority over that to the niece, Addie Hill ; and secondly, it is contended that the widow should receive the full amount of her annuity each year, although it is conceded to be necessary to intrench upon the *corpus* of the estate to supply the deficiency.

1.    It is important to observe that this annuity to the widow

is not a testamentary gift founded upon a valuable consideration, such as the relinquishment of the widow's right of dower in her husband's estate. In such case it is a familiar and well-settled rule that she does not take strictly as a beneficiary, but as a purchaser for a valuable consideration, and hence her gift will have a preference over all other unpreferred legacies. 2 Redf. on Wills, 452–4; *Towle* v. *Swasey*, 106 Mass. 100; *Moore* v. *Alden*, 80 Maine, 301. But here the annuity was not given or accepted in lieu of dower. On the contrary in the original will it is expressly declared to be in addition to her dower; the first codicil gives her the use and income of the entire homestead through her widowhood, and the second codicil after increasing her annuity from $300 to $500, carefully provides that this additional bequest "shall not take away any of the gifts, bequests or rights, given to her under my said last will and first codicil." She is entitled to her dower as well as to the provisions made for her in the will, because in the words of the statute, chapter 103, § 10, "it appears by the will that the testator plainly so intended." True, by accepting the provisions of the will, she relinquished the privilege of applying to the probate court for an allowance, but she surrendered no fixed and absolute interest in the estate in exchange for the annuity, and cannot be deemed to have received it in the character of a purchaser.

An annuity given by a will is a legacy charged on the whole estate not specifically devised. 2 Williams on Exrs. 1051. The annuities to the widow and niece are in the nature of general legacies; neither of them amounts to a bequest of any particular portion of, or article belonging to, the personal estate of the testator. Each is a simple bequest of an annuity, an absolute gift of a definite quanity. And the general rule is, that among legacies in their nature general, there is no preference of payment, and the burden is on the party seeking priority to make out clearly and conclusively that such priority was intended. 2 Williams on Exrs. 1364; *Miller* v. *Huddlestone*, 3 Macn. and Gord. 503; 2 Redf. on Wills, 454. In the absence of clear proof to the contrary the testator must be deemed to have acted on the belief that his estate would be sufficient to answer the

purposes to which he devotes it. If the chances of deficiency are anticipated and provided for by the terms of the will, then the directions of the testator must govern, *Towle* v. *Swasey*, *supra*; "but in the common case of a direction in the will of a testator to pay several pecuniary legacies out of his estate," says Chancellor Walworth, "the presumption is that the testator intended that all the legacies should be paid equally. Such presumption of intended equality will not be repelled by any ambiguous expressions in the will but must be allowed to prevail unless the will contains unequivocal evidence of the testator's intention to give some of the legatees a preference in case the fund should be found insufficient to pay all. *Shepherd* v. *Guernsey*, 9 Paige, 357. See also 1 Roper on Leg. 421-425; *Emery* v. *Bachelder*, *supra*.

It is not questioned that by the terms of the original will the widow's annuity had priority over the "residue and remainder" given to Mrs. Cushing. The name of the nieces Addie Hill, is not there mentioned. But during the succeeding eight months a thoughtful solicitude respecting the condition of Addie Hill, awakened by causes of which we have no knowledge, prevailed with the testator to make her an object of his care and bounty. Thereupon, in the first codicil after giving to the widow, in addition to the annuity given in the will, the use and income of the homestead and furniture, he proceeds in the second clause as follows: "I hereby give and bequeath to my niece, Addie Hill, . . . the sum of one hundred dollars per annum during her natural life, to be paid to her by the executors of my said will, in installments of fifty dollars every six months after my decease and during her natural life; and it is my will, and said executors are hereby directed to invest immediately after my decease a sum sufficient to yield an annual income of one hundred dollars, which investment shall be so made that the said semi-annual interest of fifty dollars shall be paid to said Addie Hill, at the end of every six months during her natural life; the same *so* to be invested from that part of my estate which would have gone to Emma Smith Cushing, had not this codicil to my said will been made, that at the decease

of said Addie Hill, the sum so invested for her benefit shall then be disposed of according to the terms of my said will."

All the provisions of the will and codicils, viewed in the light of the probable condition of his property, clearly indicate that the testator had no doubt whatever that his estate would be amply sufficient to respond to these two annuities with a residue for Mrs. Cushing. The chances of a deficiency are not anticipated or provided for by the terms of the will. He accompanies the bequest to the niece with explicit directions to his executors "to invest immediately after my decease a sum sufficient to yield an annual income of one hundred dollars." True, he adds, that the sum was *so* to be invested from the portion which would have gone to Mrs. Cushing that, at the decease of Addie Hill, it should be disposed of according to the terms of the will. This was obviously designed to re-affirm the provisions of the will in favor of Mrs. Cushing, as modified by the codicil. By the will she was to have the residue and remainder subject to the bequest to the widow. By the will and codicil she is only to have the residue subject to both annuities. The clause in the codicil giving the annuity to Addie Hill is to be examined in connection with the original will and construed as it would have been if inserted between the first and second items of the will. Its relative force and effect would then be readily apprehended. The testator carves two annuities from his estate, one for his wife and one for his niece, and then gives the residue to the adopted daughter, Emma Smith Cushing, and her heirs. This is the effect of all the clauses taken together.

The provisions of the second codicil are strongly confirmatory of this view. After increasing the widow's annuity from $300 to $500, the testator declares "that this additional bequest shall not take away any of the gifts, bequests, or rights, given to her under said last will and first codicil." He then provides that the cost of insurance, taxes and repairs on the homestead shall be paid from the income of his estate, but that "by the payment of the same none of the gifts or bequests or rights to my said wife and to my said niece, Addie Hill, shall be impaired

or diminished." Finally he provides that "it shall be the duty of my said executors to so dispose of and invest my estate that there shall from year to year be sufficient income to meet all said legacies and bequests."

"The presumption of intended equality" between the two legatees in question is not overcome by "unequivocal evidence of the testator's intention to give a preference ;" on the contrary there is clearly discernible through the language of the codicils a positive intention to place the two annuities upon that equality in which "equity delighteth."

2.   Are the annuities to the widow and niece made an absolute charge on the estate or dependent for payment exclusively upon the income ?

The general rule is, that after certain legacies are given without any express provision of means of payment, a residuary gift blending the real and personal property of the testator creates a charge of the legacies upon the entire estate, the word residue implying that such payments are first to be made.   3 Jarman on Wills, 426–427 ; *Reynolds* v. *Reynolds*, 16 N. Y. 257, and authorities cited ; *Taylor* v. *Dodd*, 58 N. Y. 375.   It is manifest that, by the terms of the original will, the annuity of the widow under the above rule was a charge upon the whole estate ; but it is claimed that the language of the codicils indicates an intention to restrict the payments to the income of the property.

It is not controverted that, if there is a simple bequest of an annuity, whatever the income of the testator's property may be, the annuity must be paid in full to the last dollar of the property ; but the provisions of the will, as to the payment of the annuity, may be such as to show an intention on the part of the testator that the annuity shall only come out of the income of the fund or estate, and not out of the *corpus* or *capital*.   2 Williams on Exrs. 1360.

In *Croly* v. *Wells*, 3 DeGex, M. & G. 995, the income was insufficient to pay the annuity and all legacies named in the will, and in holding that the annuity was payable out of the capital, Bruce, V. C., says : "The question may be put thus ; does the subsequent language show a clear intention otherwise, for if

a clear intention be shown in an earlier part of the will, that can only be displaced or changed by an intention equally clear in another part. If there is anything in the rest of the will derogating from an intention to be collected from the words of this will, it does no more than create a doubt and the doubt is not sufficient to prevail against the clear effect that would have to be given to the words of the gift standing alone." In *Baker* v. *Baker*, 7 DeGex, M. & G. 681, the assets proved insufficient to provide a capital sum which would yield a clear annual income of £200 given by the will, and it was held that the widow was entitled to have the amount paid in full out of the capital.

The predominant idea of the cases seems to be that, where the testator bequeaths a sum of money or, which is the same thing, a life annuity, in such a manner as to show a fixed and independent intention that the money shall be paid to the legatee at all events, that intention will not be permitted to be overruled merely by the direction in the will that the money is to be raised in a particular way or out of a particular fund, such direction being a secondary thought. *Pierpont* v. *Edwards*, 25 N. Y. 128; *Mann* v. *Copland*, 2 Mad. 223. If it be manifest that there was such intent separate and distinct from the property designated as the source of payment the legacy will be deemed general or demonstrative, though accompanied by a direction to pay it out of a particular estate. *Walls* v. *Stewart*, 16 Pa. St. 280. In *Smith* v. *Fellows*, 131 Mass. 20, the testator gave to his widow an annuity of $1000, during life to be paid from the income of all his property, and the court says : " The annuity given to the wife was no more a specific legacy than a legacy charged generally upon real estate. It is rather in the nature of a demonstrative legacy which has a prior right to payment out of the fund charged, but is payable at all events out of the principal of the estate if the fund proves inadequate." In *Moore* v. *Alden*, 80 Maine, 301, the annuity was made payable "from the earnings of my individual and partnership property," and it was held that the full annuity should be paid to her until the estate was exhausted. In the opinion the Chief Justice says : "The gift is unconditional and

absolute, although, as is often the case, he overestimates the sources of suppy which were to assure its payment. The sources indicated turning out to be insufficient, others must be taken to suppy the deficiency."

In the light of these principles and authorities, it is the opinion of the court that the testator's directions respecting the investment of his estate, and his allusions to income as a source of payment, are not sufficient to overcome his clearly expressed desire and purpose to make definite provision for the support of the two annuitants by bestowing upon each the gift of a fixed sum to be paid semi-annually, during the widowhood of the one and the natural life of the other. The conclusion, therefore, is that the annuities bequeathed to Harriet N. Smith and Addie Hill, standing on a basis of equality in relation to each other and to the estate, must be held a charge upon the entire property; that they are not contingent upon the sufficiency of the income, but if that proves inadequate they are payable at all events out of the entire principal available under the terms of the will, suffering proportional abatement, however, whenever there are not available fund sufficient to make full paymensts.

*Decree accordingly.*

PETERS, C. J., WALTON, VIRGIN, LIBBEY and HASKELL, JJ., concurred.