*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1617**

In re: Estate of Deborah Ann Poire, a/k/a Debra A. Poire, Decedent

**Filed August 3, 2015
Reversed and remanded
Peterson, Judge**

Winona County District Court
File No. 85-PR-11-2061

Raymond L. Hansen, O'Brien & Wolf, L.L.P., Rochester, Minnesota (for appellant Michael Martinson)

Thomas R. Braun, David L. Liebow, Bruce K. Piotrowski, Restovich Braun & Associates, Rochester, Minnesota (for respondent Diocese of Winona)

Considered and decided by Peterson, Presiding Judge; Johnson, Judge; and Minge, Judge.[*]

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

This appeal is from a probate order that interprets a will that the district court determined is not ambiguous. Because we conclude that the will is ambiguous, we reverse and remand for further proceedings.

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**FACTS**

Deborah Ann Poire died testate on August 4, 2011. Poire left a five-page holographic will that she drafted on December 14, 2003, and amended by codicil on June 11, 2010. Two will provisions control the distribution of Poire's undivided one-half interest[1] in a half section of land (subject property). The first provision directs that Poire's nominated personal representative, appellant Michael Martinson, is to

> divide and distribute [her] possessions as follows:
>
> . . . ,
>
> West 1/2 of section 20 in Rochester Township, Rochester, MN (1/2 interest in property) to Mike Martinson & the Department of Natural Resources. Mike shall own 1/2 and be entitled to farm the entire portion willed & distributed from my estate until he shall choose to stop renting it out, and/or working it himself. At that time he may sell his portion – the other portion may then be developed as a game preserve by the department of natural resources. If the department of Natural Resources declines to use this property for preserving plant & animal life, the property then shall completely & totally be the sole ownership of Mike Martinson & Diocese of Winona – c/o Bishop John Quinn.

The will contains another provision that states:

> Monies & property distributed to Michael Martinson shall be held in a trust that only he can access. It may not be accessed for child support or to be accessed by other creditors. After Michael Martinson's death, if there is money still in the trust these monies shall be distributed to Diocese of Winona.

The estate proceeded to formal unsupervised administration, and the district court appointed Martinson to serve as personal representative. Martinson petitioned for

---

[1] Poire and her sister were tenants in common.

interpretation of Poire's will and sought an interim distribution of the subject property to Martinson. Respondent Diocese of Winona (Diocese) responded to the petition and asked the district court to interpret the will "to reflect a life estate for Mike Martinson and a vested contingent rem[a]inder for the Diocese of Winona." The Diocese also sought the establishment of a trust and, in the alternative, requested an evidentiary hearing to determine Poire's testamentary intent. The Minnesota Department of Natural Resources (DNR) disclaimed any interest in the subject property because the property did not meet its land-acquisition goals.

The district court held a hearing on the matter that was limited to the arguments of counsel. The parties agreed that the DNR had disclaimed any interest in the subject property and that the will provides that Martinson is entitled to farm or rent out the entire subject property for as long as he wishes. They disagreed about what is to happen when Martinson chooses to stop farming or renting out the property.

Martinson's attorney argued that one-half of the subject property should go to Martinson and that Martinson may immediately sell that half. And because the DNR had disclaimed any interest in the subject property, the other half should be divided into halves and one of the halves should go to Martinson and the other half should go to the Diocese. The end result would be that Martinson would receive three-quarters of the subject property and the Diocese would receive one-quarter of the subject property. Martinson's attorney also argued that the will provision regarding a trust was ineffective because Poire did not separate the legal interest in the trust property held by the trustee from the beneficial interest held by the beneficiary.

3

The Diocese argued that the one-half interest in the subject property that Poire intended to give to Martinson "is to be held in a non-revocable trust with spendthrift provisions against payment for child support or any other creditors" and that money or property in the trust when Martinson dies should vest with the Diocese. And, because the DNR had disclaimed any interest in the subject property, the other one-half interest in the subject property should pass to the Diocese in fee simple when Martinson stops farming or renting the property or dies.

Following the hearing, the district court found that an evidentiary hearing was not necessary because the will is not ambiguous and resort to extrinsic evidence was, therefore, unnecessary. The district court also found:

> 14. The Will expresses [Poire's] intent to give 1/2 interest in the property ("First Half of the Real Property") to [Martinson] and the other 1/2 interest in the property ("Second Half of the Real Property") to the DNR (or in the alternative, the Diocese of Winona) after [Martinson] stops farming or renting out the land for farming.
>
> 15. [Poire], by stating in the Will that any money in the trust after Michael Martinson's death shall be distributed to the diocese of Winona, intended to give whatever is left of the First Half of the Real Property after [Martinson's] death to the Diocese of Winona.
>
> 16. The DNR, by letter dated January 24, 2014, has indicated that they are not interested in acquiring the property via donation.
>
> 17. [Poire], in her Will, created a valid spendthrift trust by stating, "[m]onies & property distributed to Michael Martinson shall be held in a trust that only he can access. It may not be accessed for child support or to be accessed by other creditors. . ."

4

. . . .

20.   . . .[N]o trust is invalid or terminated, and title to trust assets is not merged, because the trustee or trustees are the same person or persons as the beneficiaries of the trust.  Minn. Stat. § 501B.13.

The district court denied the Diocese's request for an evidentiary hearing.  The district court also denied Martinson's request for immediate distribution of all interest in the subject property.  The district court ordered the subject property to

be distributed to [Martinson] and the Diocese of Winona, with [Martinson] retaining an interest in farming and renting the entire property until such time as he decides to no longer do so.  At which time, he may sell his 1/2 of the property (First Half of the Property) and the other half (Second Half of the Property) will be owned by the Diocese of Winona.  Upon [Martinson's] death, whatever remains of the First Half of the Property shall be distributed to the Diocese of Winona.

## D E C I S I O N

## I.  Will provisions

"The primary purpose of construing a will is to discern the testator's intent." *In re Estate & Trust of Anderson*, 654 N.W.2d 682, 687 (Minn. App. 2002), *review denied* (Minn. Feb. 26, 2003).  "[W]e determine the testator's intent from a full and complete consideration of the entire will." *In re Estate of Lund,* 633 N.W.2d 571, 574 (Minn. App. 2001); *see In re Shields*, 552 N.W.2d 581, 582 (Minn. App. 1996) ("In construing a will, the cardinal rule is that the testator's intention is to be gathered from the language of the will itself." (quotation omitted)), *review denied* (Minn. Oct. 29, 1996).

If there is no ambiguity when the will is read as a whole, extrinsic evidence is not admissible.  *In re Trust of Hartman*, 347 N.W.2d 480, 483 (Minn. 1984).  However, if

5

ambiguity "exist[s] in the will, extrinsic evidence may be admitted to resolve the ambiguity." *In re Estate of Arend*, 373 N.W.2d 338, 342 (Minn. App. 1985). "Whether a will is ambiguous is a question of law that this court reviews de novo." *Shields*, 552 N.W.2d at 582. A will is ambiguous if "the language of the will, on its face, may suggest more than one interpretation." *Arend*, 373 N.W.2d at 342.

We disagree with the district court that the will provisions regarding the division and distribution of the subject property are not ambiguous. The will provides that Martinson "shall own" one half of the subject property but will be entitled to farm or rent out the entire subject property until he chooses to stop doing so. Then, Martinson may sell his half, and, with respect to the other half of the subject property, the will provides, "If the [DNR] declines to use *this property* for preserving plant & animal life, *the property* then shall completely & totally be the sole ownership of [Martinson] and [the Diocese]." (Emphasis added.)

The DNR has declined to use any of the subject property, which means that the Diocese will acquire some ownership. But it is not clear whether "this property" and "the property" refer to the same property. It is clear that "this property" refers to one half of the subject property because Martinson is to receive one half of the subject property and the DNR was only given an opportunity to use the remaining half of the subject property. Therefore, the only property that the DNR could decline to use was the remaining half. But "the property" could refer to the one half that the DNR declined to use, which would mean that only that half of the subject property would be in the ownership of Martinson and the Diocese. Or "the property" could refer to the entire subject property, which

6

would mean that the entire subject property would be in the ownership of Martinson and the Diocese. Because we conclude that the will is ambiguous, but the district court interpreted the will based on its determination that the will is not ambiguous, we reverse and remand for further proceedings to interpret the ambiguous will.

## II. Trust provisions

In Minnesota, an express trust consists of "(1) a designated trustee with enforceable duties; (2) a designated beneficiary vested with enforceable rights; and (3) a definite trust res in which the trustee has legal title and the beneficiary has the beneficial interest." *Thomas B. Olson & Assocs., P.A. v. Leffert, Jan & Polglaze, P.A.*, 756 N.W.2d 907, 914-15 (Minn. App. 2008) (quotation omitted), *review denied* (Minn. Jan. 20, 2009). "The manifestation of intent to create a trust will be effective even if the settlor's language is inept, clumsy, or even unsuitable." *Id.* at 915 (quotation omitted).

> A settlor's intention must be ascertained from the language of his will, which may have a meaning controlled by surrounding circumstances or context. The specific provisions of the document should not be read in isolation and whenever possible, effect should be given to every provision of the instrument. . . . On review, appellate courts evaluate the district court's findings concerning wills and trusts under a clearly erroneous standard and review conclusions of law de novo.

*In re Trust Created Under Agreement with Lane*, 660 N.W.2d 421, 425-26 (Minn. App. 2003) (quotations omitted).

Martinson argues that the will fails to impose a trust on Martinson's interest in the subject property because it does not separate the legal and beneficial interests in the subject property. The district court rejected this argument and ruled that the trust is "a

7

valid spendthrift trust." The district court was correct that Martinson's status as both the trustee and primary beneficiary of the trust did not invalidate the trust. Under Minnesota law, "[n]o trust is invalid or terminated, and title to trust assets is not merged, because the trustee or trustees are the same person or persons as the beneficiaries of the trust." Minn. Stat. § 501B.13 (2014); *see Morrison v. Doyle*, 582 N.W.2d 237, 242 (Minn. 1998) (applying section 501B.13, stating, "[T]here is no merger of Doyle's legal and beneficial interests simply because he is both the trustee and the primary beneficiary of the trust.").

Martinson also argues that the district court erred by ordering that his interest in the subject property be both distributed to him and placed into trust. The district court found that the will "created a valid spendthrift trust by stating, '[m]onies & property distributed to Michael Martinson shall be held in a trust that only he can access.'" The district court also granted the request of the Diocese to interpret the will as creating a trust. But the district court ordered:

> The subject property shall be distributed to [Martinson] and the Diocese of Winona, with [Martinson] retaining an interest in farming and renting the entire property until such time as he decides to no longer do so. At which time, he may sell his 1/2 of the property (First Half of the Property) and the other half (Second Half of the Property) will be owned by the Diocese of Winona. Upon [Martinson's] death, whatever remains of the First Half of the Property shall be distributed to the Diocese of Winona.

The district court's statement that "the subject property shall be distributed to [Martinson]" makes it unclear whether the subject property will be held in a trust that

8

only Martinson can access.  On remand, the district court should specify what property will be held in the spendthrift trust.

**Reversed and remanded**.